UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOARD OF TRUSTEES OF THE MASONRY
SECURITY PLAN OF WASHINGTON, et al.,

Plaintiffs,

v.

ETHAN ENTERPRISES, INC., a Washington corporation,

Defendant.

CASE NO. C04-659RSM

ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT

This matter is before the Court for consideration of plaintiffs' motion for summary judgment. Oral argument was held on July 27, 2005, and the matter was taken under advisement. For the reasons set forth below, the Court now denies this motion.

## DISCUSSION

Plaintiffs, who are trustees of various pension and benefit plans, filed this action to collect unpaid benefit contributions owed by a bankrupt employer, Tift & Young, Inc. Defendant Ethan Enterprises, of which Greg Tift is the president, is named as the alter ego or successor corporation to the bankrupt corporation. Both corporations are building contractors, primarily in flooring. Plaintiffs have moved for summary judgment, contending there are no issues of fact as to the alter ego or successor status of Ethan. Ethan, in response, argues that there are issues of fact as to its alter ego or successor status which preclude summary judgment. The Court shall analyze the two theories of liability separately.

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT- 1

I. <u>Alter Ego</u>

It is not necessarily illegal for a contractor to conduct business through a "double breasted" operation, in which the same contractor owns both union and non-union companies for the purpose of conducting business. However, in order to guard against abuses, such as using the non-union firm to avoid collective bargaining agreements of the union firm, the courts have developed the "alter ego" theory. <u>UA Local 343 of the United Association of Journeymen & Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, et al., v. Nor-Cal Plumbing, Inc., et al.</u>, 48 F. 3d 1465, 1470 (9th Cir. 1995). Under this theory, the plaintiff must show that the non-union firm is being used "in a sham effort to avoid collective bargaining obligations," rather than for legitimate business purposes untainted by "union animus". <u>Id.</u>; *citing* <u>Haley & Haley, Inc., v. NLRB</u>, 880 F. 2d 1147, 1150 (9th Cir. 1989) (*per curium*).

To prevail on an "alter ego" theory, plaintiffs must make a threshold showing that the two firms are a single employer, by demonstrating (1) common ownership, (2) common management, (3) interrelation of operations, and (4) centralized control of labor relations. <u>Id</u>. at 1471. No one factor is controlling, and all need not be present. <u>Id</u>. The most important factor is centralized control of labor relations, which can be demonstrated either (a) by showing common control of day-to-day labor matters, or (b) by showing that the person in charge of the union company's labor relations made the decision that the second company would be non-union. <u>Id.</u>; *citing* <u>NLRB v. Don Burgess Construction Corporation</u>, 596 F. 2d 378, 385-86 (9th Cir.); *cert. denied*, 444 U.S. 940 (1979).

After showing that the two firms are a single employer, plaintiffs must then establish Ethan as the alter ego of Tift & Young by showing that Ethan was created "in an attempt to avoid the obligations of [Tift & Young's] collective bargaining agreement through a sham transaction or a technical change in operations." <u>Id</u>., *citing* <u>A. Dariano & Sons, Inc., v. District Council of Painters No. 33</u>, 869 F. 2d 514, 518 (9th Cir. 1989).

It appears from plaintiffs' recitation of the facts that they have met their initial burden. Plaintiffs assert that Tift & Young, Inc., declared bankruptcy in June of 2002, and within a day or two thereafter owner Greg Tift advised a project manager on one of the Tift projects that he had started a new,

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT- 2

nonunion company named Ethan. He asked that Ethan be substituted for Tift as subcontractor on the project. Although the evidence shows that Ethan was actually started by Rebecca Johnson, plaintiffs argue that she is Mr. Tift's domestic partner and they are presently raising a family together. Mr. Tift admitted in his deposition that forming the new company may have been his idea, not Ms. Johnson's. Plaintiffs further assert that Tift & Young and Ethan operated from the same office address, employed some of the same floor installers, and used much of the same office equipment and tools of the trade, including three trucks. In these allegations and others not repeated here, plaintiffs have asserted facts which, if uncontroverted, could lead to a finding that Ethan is the alter ego of Tift.

Once plaintiffs have made this initial showing, the burden shifts to defendant to present specific facts that raise a genuine issue of material fact for trial. Id. at 1473. Defendant has accomplished this through the declarations of Greg Tift and Rebecca Johnson. The evidence shows that Ethan was incorporated October 19, 2001 by Rebecca Johnson. Greg Tift states that while he took over the management of Ethan in 2002, Ms. Johnson remained president and sole shareholder until 2004. Greg Tift then acquired all the stock of Ethan and became president. He states that the type of business engaged in by the two companies is different, that the phone numbers and office locations are different, and that the labor management for Ethan was done by Rebecca Johnson, not by him. Mr. Tift also flatly denies several statements that plaintiffs have attributed to him, such as that the union "was out to screw him". Ms. Johnson, for her part, affirms that forming Ethan was solely her idea; she asserts that she did not seek Mr. Tift's advice in doing so. She states that if there was any "carryover" between the two companies, in terms of customers, equipment, or employees, it was purely coincidental. Further, she asserts that her disinclination to pursue union affiliation for her company was not based on general anti-union animus, but rather on her finding that the union representatives were "not very tactful and overbearing." Thus, she asserts that the creation of Ethan as a nonunion company had nothing to do with helping Tift & Young avoid its obligations to the unions.

It is a long-standing rule of jurisprudence that the Court may not make credibility determinations at the summary judgment stage. "[T]he judge does not weigh conflicting evidence with respect to a disputed material fact. . . . Nor does the judge make credibility determinations with respect to statements

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT- 3

made in affidavits. . . . These determinations are within the province of the fact-finder at trial." T.W. Electrical Service, Inc., v. Pacific Electrical Contractors Association, 809 F. 2d 626, 630-31 (9th Cir. 1987). Where direct evidence produced by the parties is in conflict, the Court must assume the truth of the evidence of the non-moving party with respect to the facts in dispute. Id.

The declarations of Greg Tift and Rebecca Johnson create material issues of fact regarding several factors of the alter ego test, such as commonality of ownership, management, and control of labor relations. Further, they raise a genuine issue as to the intent and motive in forming Ethan Enterprises, and whether it was merely a "sham transaction" to avoid the union obligations of Tift and Young, Inc. UA Local 343, 48 F. 3d at 1470. As these issues are for the jury, not the Court, to resolve, plaintiffs' motion for summary judgment on the alter ego theory is DENIED.

II. Successor Liability

Generally, an employer is not obligated to contribute to an employee benefit plan unless the employer is an actual signatory to the plan. Oregon Laborers-Employers Health & Welfare Trust Fund v. All State Industrial and Marine Cleaning, Inc., 850 F. Supp. 905, 909 (D.Or. 1994). However, a non-signatory may be subject to liability for contributions under certain circumstances, such as where the non-signatory is the successor to a signatory. Id., *citing* Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc., 823 F. 2d 289 (9th Cir. 1987). Thus, plaintiffs propose successor liability as an alternative to their alter ego theory.

Successorship may be found from the following factors: (1) there has been substantial continuity of business operations; (2) the new business uses the same plant or facilities as the old; (3) the same or substantially the same work force is employed; (4) the same jobs are performed under the same working conditions; (5) the same supervisors are employed; (6) the same machinery, equipment, and methods of production are used; and (7) the same product is manufactured or the same service is offered. Hawaii Carpenters, 823 F. 2d at 294; *citing* NLRB v. Jeffries Lithograph Co., 752 F. 2d 459, 463-69 (9th Cir. 1985). The primary question is whether there is "substantial continuity"; the absence of one of the factors will not alone defeat a claim of successorship. Id.

Here, the declarations filed by defendant defeat summary judgment on the successorship claim just

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT- 4

as they did on the alter ego theory.   Greg Tift and Rebecca Johnson assert that Ethan was formed before Tift & Young went bankrupt, not after;  they did not substantially use the same offices, employees, or supervisors; and the work performed was different.   As the Court cannot question the credibility of these statements, summary judgment is DENIED on the successorship claim as well.

   III.  Motion to Strike.

 In opposing summary judgment, defendant has moved to strike to certain evidence presented by plaintiffs, contending it is inadmissible.  This includes (1)  the Declaration of Rocky McNeill, a witness who was disclosed after the disclosure deadline; (2) hearsay statements of Greg Tift, which defendant asserts not admissible under the "admissions of a party opponent" rule because Greg Tift is not a party; (3) a Declaration of Nicolette Hernandez with accompanying transcripts of Mr. Tift's first meeting of creditors in the Tift & Young bankruptcy; (4) a Declaration of Philip Lindquist;  and (5) the deposition of Greg Tift.  In light of the disposition of the motion for summary judgment, it is not necessary for the Court to consider striking any of these.  Therefore, the motion to strike is DENIED,  subject to renewal as necessary in a motion in limine to exclude certain evidence at trial.


    DATED this    19    day of   August     , 2005.


                    RICARDO S. MARTINEZ
                    UNITED STATES DISTRICT JUDGE

ORDER DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT- 5